# Appeal of the Susquehanna Mutual Fire Insurance Company.

1. A. took out a policy of insurance in a Mutual Fire Insurance Company, and gave the company a premium note whereby he promised "to pay $1,237.50 in such portions . . . . . as the directors of the company might, agreeably to the Act of Assembly . . . . . and the by-laws of the company, require." A by-law of the company provided as follows: "In case any buildings, goods, or other property insured shall be burned or damaged by fire, the directors shall retain, in the treasurer's hands, the premium note given for the insurance of said property, and also such amount remaining unpaid upon said note as the board of directors may deem a sufficient security for the payment of assessments of the assured until the expiration of the policy; and upon such expiration the balance (if any) in the treasurer's hands shall be paid to the assured." The insured property was destroyed by fire, and A. brought suit against the company, on his policy, and recovered. The amount of his judgment was paid into court by the company, "there to abide the further orders of the court for distribution." This fund in court was then attached by the company, which claimed a lien on it, by virtue of the above by-law, to pay assessments for losses levied by the company on A.'s premium note, which losses occurred during the whole term of the policy, both before and after A.'s own loss:

*Held,* that the company was entitled to retain the amount of such assessments, out of the fund in court.

2. Notices of said assessments were not given to A. as required by a by-law, and for that reason it was held in another action by the company against A., to recover said assessments, that they could not recover:

   *Held,* that said action was not an adjudication of the company's claim of lien, in this suit.

3. The money was paid into and accepted by the court, for the purpose of determining the question of the right of the company to retain, or have paid to them, out of the fund, the amount of the assessments:

   *Held,* that by so parting with the fund, the company did not lose their right of lien upon it.

4. The company defended against A.'s action on the policy on the ground that the same was forfeited and void:

   *Held,* that they were not thereby estopped from asserting their right of lien, under the policy, after it had been held valid.

March 12, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK. JJ.

APPEAL from the Court of Common Pleas of *Northampton county:* Of January Term, 1884, No. 370.

Appeal of the Susquehanna Mutual Fire Insurance Company, from a decree of said court distributing a certain fund paid into court by said company.  This fund was the amount of a judgment against the company, recovered by one John H. Staats on a policy of insurance held by him; out of which, however, the company claimed to retain a certain sum, as due them for assessments on Staats' premium note, given to provide for his proportional share of the losses which might occur during the term of his policy.

By agreement filed, the question was submitted to the court without the intervention of an auditor, and at the hearing, before MEYERS, P. J., the following facts appeared: On October 3, 1876, Staats obtained a policy of insurance from the Susquehanna Mutual Fire Insurance Company, insuring certain real and personal property for the sum of $3,000, for a period of five years.  This property was destroyed by fire, April 16, 1877.

Staats brought an action in the Court of Common Pleas of Northampton county, on his policy, and recovered a verdict for $2,534.35, upon which judgment was entered in April, 1882, and confirmed by the Supreme Court in March, 1883. (6 Out., 529.)

Upon the premium note of defendant, given to company at time of insurance, were levied assessments for losses occurring to plaintiff during the whole term of the policy, both before and after defendant's own loss, amounting to $1,159.12.

To recover the amount of these assessments, a foreign attachment was issued in the Common Pleas of Dauphin

county, April 27, 1883, by the company against Staats, a resi-
dent of New Jersey, and the amount of money due upon his
judgment recovered, was attached in the hands of the com-
pany, whose principal office is at Harrisburg.

Afterwards a writ of fi. fa. was issued, out of the Common
Pleas of Northampton county, on Staats' judgment against
the company, and on September 11, 1883, in order to prevent
a sale while the company's rights were in dispute upon this
writ of attachment in another jurisdiction, they presented a
petition to the Common Pleas of Northampton to stay the
execution.   •

In pursuance of this petition the court made the following
order : " On motion, the court ordered the sheriff to continue
the sale under the above stated fi. fa. to Saturday, the 6th of
October next, at 10 A. M., and that the defendant have leave,
at or before that time, to pay into court the amount of the
damages and costs called for by said fi. fa., and in default
thereof the sale to proceed.   That if the money is paid into
court the same shall be subject to the order of this court."

On October 3, 1883, the company paid into court the sum
of $2,788.58, and the writ of fi. fa. was stayed.   At the same
time the court made an order that the disputed question on
the writ of foreign attachment in the Common Pleas of
Dauphin county was " to be first disposed of between the par-
ties before the Common Pleas of Northampton county, and
the money hereby directed and permitted to be paid into
court, to be awarded and divided as may hereafter be
decreed."

On December 8, 1883, an amicable action was begun in the
Common Pleas of Northampton county, wherein the insur-
ance company was plaintiff and Staats defendant, to recover
payment for the amount of assessments on the premium note
above referred to ; and the action was referred to the court
under the Act of 1874.   On this submission, testimony was
taken in open court, and on the 18th of February, 1884, the
court made report of findings of facts and conclusions of law,
the legal effect of the latter being that the plaintiff was not
entitled to recover.   This decision was based chiefly on the
grounds, first, that the company plaintiff having defended the
suit on the policy because of false warranties, and failure of
defendant to furnish proofs of loss, they were estopped from
recovery of these assessments, levied upon the premium note ;
and second, that the writ of foreign attachment in Dauphin
county, issued seven months before, of which it was admitted
all parties had notice, was not a sufficient notice of assessment
to the defendant to permit a recovery.

From the judgment thus entered, the company took a writ of error.

Pending exceptions filed in said proceedings, the company presented the. petition upon which this present appeal arises. This petition set out the facts above stated, and prayed, on behalf of the company, "to have distributed to it out of the fund in court the sum of $1,159.15, being the amount of assessments levied upon the premium note of said plaintiff, for losses occurring in said company during the term of defendant's policy, and to which said defendant is entitled by virtue of a lien, under the provisions of the by-laws of said insurance company, being conducted on the mutual plan."

On this petition a rule was granted on Staats to show cause, &c., and he filed an answer denying the right of the company to any part of the fund.

After argument, MEYERS, P. J., delivered the opinion of the court, which was, inter alia, as follows: "The right of the corporation to a part of said fund in court is based on the assessments made by it on the plaintiff's (Staats') premium notes, amounting to $1,159.12, for the reason that such assessments. are a lien on said fund, by virtue of the 26th and 34th sections of the by-laws of said corporation, irrespective of the fact that the plaintiff had no notice of such assessment as is required by the 5th clause of the 31st section of said by-laws.

The 26th section provides that, "If any assessment that may hereafter be levied on a premium note, be and remain unpaid on the day fixed by the secretary for the payment of the same, shall render absolutely void all policies on which the assessment may remain unpaid as above, and be a full bar against such defaulting member for all losses that may occur during the time the assessment may so remain unpaid, and the directors shall retain such premium note or notes, and collect thereon all such sum or sums as may be due or become due thereon during the time for which it has originally been given."

The 34th section provides that, "In case any buildings, goods, or other property insured shall be burned or damaged by fire, the directors shall retain in the treasurer's hands the premium note given for the insurance of said property, and also such amount remaining unpaid upon said note as the board of directors may deem a sufficient security for the payment of assessments of the assured until the expiration of the policy; and upon such expiration the balance (if any) in the treasurer's hands shall be paid to the assured." The 26th section clearly does not create a lien in a case like this, or in any case. The 34th section, by virtue of the right to return a portion of any moneys of the insured in the hands of the

corporation, may, by implication, create a lien of the assessments, present and future, on such moneys. . . . . . While I am inclined to think that general statute authority to make by-laws is sufficient to create a lien by virtue of a by-law so enacted, yet there are more serious objections to the claim that the assessments are a lien in this case, and that is whether the corporation had the legal right to make such assessments. We find as a fact, from the evidence, that on the trial of the action, John H. Staats *v.* The Susquehanna Mutual Fire Insurance Company, on his policy, some of the defences to it were, that the policy of insurance was forfeited and void. . . . . . As the assessments were made after the destruction of the property insured by fire, and after the action on the policy was commenced by the plaintiff against the corporation, and the latter having interposed said defences, it is estopped, in this proceeding, from alleging that the contract of insurance was valid and binding on the plaintiff, and it could not, therefore, legally assess said plaintiff for losses while repudiating the contract of insurance.

So also the 5th clause of the 31st section of the by-laws of the corporation provides that, "Whenever an assessment has been levied, the secretary shall, as soon as practicable, give written or printed notice to each and every policy-holder, by mail or otherwise, advising him, her or them of the amount due by them, and the time when payment must be made." We find, as a fact, that no written or printed notice was given to the plaintiff of said assessments, the amount due by him, and the time when payment must be made, and consequently, as there was no right of action in the corporation against the plaintiff to recover said assessments, or the money of the plaintiff in the corporation's hands was subject to attachment, it follows that such assessments are also no lien on the moneys of the plaintiff in the hands of the corporation.

As the by-law simply provides for the retention of the plaintiff's money in the hands of the corporation to meet present and future assessments, and therefore where the corporation asks to be permitted to pay money due by the corporation to the plaintiff on an execution in the hands of the sheriff into court, and doth in fact pay it into court, it is very doubtful whether the by-law can be worked to enable said corporation to take any part of the fund out of court. As the court in the amicable action found that the corporation could not recover the assessments from Staats, it is contended by the plaintiff that the question of the right of the corporation to distribution of the fund in court in this proceeding is *res adjudicata.* This position, we think, is not strictly tenable, as the right to distribution might rest on independent grounds, though the

corporation could not legally recover the assessments in a common law action.

As we understand the law and facts of this case, we are of the opinion that the Susquehanna Mutual Fire Insurance Company are not entitled to any part of the fund in court.

The court accordingly awarded the entire fund in court, less costs of commission, to Staats, whereupon the company took this appeal, assigning for error the refusal of the court to award the sum of $1,159.12 to them, as claimed in their petition.

*Henry W. Scott* and *W. S. Kirkpatrick*, for the appellant.— The appellee gave his premium note to the appellant, wherein he promised to pay $1,237.50 " in such portions, and at such times, as the directors of said company may, agreeably to the Act of Assembly governing insurance companies, with the various supplements thereto, and the by-laws of the company require." His contract with the company, when the policy issued, was that this policy is made and accepted in reference to the by-laws of this company; also the application and the conditions hereto annexed, which are made a part of this policy, and to be used and " resorted to in order to explain the rights and obligations of the parties hereto."

It was recited in his policy that his premium note was " subject to the payment of such assessments as may be made thereon for the purpose of paying losses and the necessary expenses of the company accruing during the term of this policy." A policy holder in mutual insurance, suffering loss before the term of his policy has ended, is still liable, until the end of that term, to contribute his assessments. The assured, in any event, if he makes such a contract, as he did here, is bound by it: May on Insurance, §§ 553, 555; Bangs *v.* Skidmore, 21 N. Y., 136; Boots & Shoes Ins. Co. *v.* Melrose Society, 117 Mass., 199; Iowa Ins. Co. *v.* Prossee, 11 Iowa, 115; New Hamp. Ins. Co. *v.* Rand, 4 Fost., 428. The company then was entitled to levy its assessments, if nothing else interposed, for the amount claimed. Having levied, it had a lien for them upon the judgment recovered by the appellee. Although there is no such lien at common law, yet whenever a lien is created by statute, or by charter of incorporation, those dealing with a corporation are bound by it. So where created by a by-law, those dealing with the company, and having notice of the by-law, are bound by it: Rogers *v.* Huntington Bank, 12 S. & R., 77; Sewall *v.* Lancaster Bank, 17 S. & R., 285; Grant *v.* Mech. Bank, 15 S. & R., 140; Steamship Dock Co. *v.* Heron, 2 P. F. Sm., 280. In a mutual insurance company every insured is held to knowledge; and the

appellee here has expressly included the by-law as part of the contract, and thus created the lien for himself: Geyer *v.* Insurance Co., 3 Pittsb., 41; Morgan *v.* Bank of North Am., 8 S. & R., 73; 1 Amer. & Eng. Corp. cases, pp. 39 and 40.

The court below in permitting the payment of the money into court for distribution expressly preserved the rights of the appellant. Certainly its lien was not lost by thus parting with the fund. It is only when a person having a lien upon personal chattels parts voluntarily with possession that he loses his privilege: Addison Contracts, *1185; Trickett on Liens, § 756; Kent Com., vol. 2, p. *639; and not then if the parties otherwise agree: Sawyer *v.* Fisher, 32 Maine, 28.

The Court below has held that the estoppel arises, because the company defended against the suit on the policy of insurance, on the ground of forfeiture. The defences made by the insured were principally, that policy was forfeited because of false warranties, over-valuation, and failures to furnish proofs of loss. But by the terms of the policy, apparently overlooked by the court below, it is provided that "if said policy shall become void through the acts of the said applicant, the company shall have the right to retain the premium note given for said policy, and collect such interest and assessments as may be due, or become due, on the same." From this provision, and sec. 26 of the by-laws (*supra*), it is plain that the assured, by his contract, is obliged to pay his assessments during the term of his policy, whether his policy is avoided or not. Other conditions being fulfilled, the company is entitled to recover the assessments whether it waives the forfeiture of the policy or defends and enforces it.

*E. J. Fox* (with whom were *E. J. Fox, Jr.*, and *Elisha Allis*), for the appellee.—Inasmuch as the company has, in an action, denied liability on the ground that the policy had become void, it cannot recover on the premium note for any losses which occurred after the date of the forfeiture: Tuckerman *v.* Bigler, 46 Barb., 375; Rodermund *v.* Clark, 46 N. Y., 354; Columbia Insurance Co. *v.* Masonheimer, 26 P. F. S., 138.

Two courses of action were open to the company; one in affirmation of the policy, payment of the loss and recovery of assessments; the other in disaffirmance, contesting the loss, and repudiating the contract. This company took the latter course and is bound by it. It elected to avoid the policy, *ab initio.* The doctrine of election holds where remedies are inconsistent with each other: Patterson *v.* Swan, 9 S. & R., 16; Cox *v.* Cox, 2 Casey, 382. The contract of insurance is admitted to have been one and entire, and it is well settled that a person cannot accept and reject the same instrument:

Birmingham *v.* Kirwan, 2 Sch. & L., 449. The appellant contends that although the claim for assessments is invalid for collection, it is valid as a lien upon the fund made by the appellee's execution. But the fund in court being the fruit of Mr. Staats' execution was not, by expression or implication, "an amount remaining unpaid upon said note," but was entirely distinct and separate. The assessments themselves are utterly valueless, for want of due notice, as a lien or for any other purpose. A lien must be founded on a substantial legal right, or it is valueless for the purpose of assertion or retention.

By the payment into the Court of Common Pleas of Northampton County, upon Mr. Staats' execution, of the amount of his judgment with interest and costs, all connection between the fund and the company's claim for assessments was broken.

To sum up: Under the contract of insurance, as defined and limited in section 34 of by-laws, the only claim which the company could have made was for "assessments of the insured until the expiration of the policy;" and the contract being admitted as one and entire, and the policy having expired nearly seven months before the verdict, the company was bound to defalcate all its claims upon it upon the trial, and is concluded by the verdict.

A lien, in any event, is but a legal right to detain for the security of a valid debt; and where, as here, the assessments upon which it is based are invalid, for want of notice, it has no existence, and cannot be asserted for any purpose. Hence it is of no consequence whether the company parted with the fund from necessity to save the corporate franchise or not. It had no valid lien for invalid assessments, even while it held the fund; and there was therefore no lien after it had parted with the fund. It has already been shown that the premium note had no relation to a fund produced by adverse process and upon execution. Therefore the questions of *lien*, and consequent *detention*, are not in this case, and the judgment of the court below must be affirmed.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

The 34th section of the by-laws of the Insurance Company, appellant, is in the following words:

"In case any buildings, goods or other property insured shall be burned or damaged by fire, the directors shall retain in the treasurer's hands the premium note given for the insurance of said property, and also such amount remaining unpaid upon said note as the board of directors may deem a sufficient security for the payment of assessments of the assured until

the expiration of the policy; and upon such expiration the balance (if any) in the treasurer's hands, shall be paid to the assured."

Although the meaning of this section is not very accurately expressed, its import undoubtedly is, that in case of a loss upon a policy, the company shall retain out of the money due to the insured for the loss, so much, not exceeding the amount unpaid upon the premium note, as the directors may deem sufficient for the payment of possible future assessments during the continuance of the policy, that is, assessments to which the insured would be regularly subject under the policy. Such assessments would, under the contract of the parties, be for losses occurring during the term of the policy, whether they were actually made before or after the policy expired. This by-law was in force at and before the time when the policy to the appellee was issued. By one of the provisions of the policy it was agreed that the policy was made and accepted in reference to the by-laws of the company, and also the application and conditions annexed, which are made a part of the policy, and to be used and resorted to, in order to explain the rights and obligations of the parties. By this provision the by-laws in existence at the date of the policy became part of the contract of the parties. There is a proviso annexed to the 34th section of the by-laws which more fully explains its meaning. It is as follows: "Provided, however, that should the assured give sufficient security for the payment of all future assessments on policies above referred to, and then, in that case, the whole amount of the claim shall be paid in full." This clearly explains that the insured shall continue subject to all future assessments, although his own policy has practically expired by reason of the destruction of the property insured, and the clause authorizes a substitution of security for the payment of future assessments, in place of a retention of part of the money due on the policy for the loss sustained. By the second clause of the 31st section of the by-laws it is provided that "All premium notes which have expired, and are not in force at the time such assessment is declared, shall nevertheless be liable to assessment for all unpaid losses which existed at the time of the expiration of such premium note or notes, pro rata with all other premium notes then in force." Under this clause it is manifest that assessments may continue to be made upon premium notes which have expired, for all losses which occurred while the notes were in force. In addition to this the policy contains a provision that "the insured has deposited a premium note subject to the payment of such assessments as may be made thereon for the purpose of paying losses and the necessary expenses of the company occurring during the term of this

policy." Whatever may be said in reference to the reasonable or unreasonable character of a contract with such provisions, it is enough for the purposes of this case to know that the contract of these parties is of this character. We see nothing contrary to public policy in it, nor are we aware of any other consideration affecting its validity on this account, and therefore so far as the courts are concerned they are bound to enforce it as they find it. If parties make such contracts they must be bound by them. It follows that assessments made upon the premium note given by the appellee, after the loss sustained under his policy occurred, are not for that reason invalid assessments. Nor can we regard the circumstance that these assessments are of a large aggregate amount, as any reason against their validity. The possibility of assessments to such an amount as $1,159, upon a policy of only $3,000, would constitute a very good reason for not entering into a contract which could have such a result, but it will not avoid the contract. We know nothing as to the correctness of these assessments, and do not now decide them. That will be matter for future determination. But if they were correctly made, to meet losses and expenses actually incurred, and are not in excess of. the proportion which ought to be borne by the appellee, we know of no reason why he should not be subject to them to their full extent.

In this case the question turns upon the right of the appellant to take out of the fund in court an amount necessary to pay the assessments upon the premium note given by the appellee. The fund is the money, found by a verdict and judgment in another case, to be due the appellee for a loss sustained under a policy written by the appellant. The premium note upon which the assessments in question were made, accompanied that policy. Notices of the assessments were not given to the insured, as they were made, and for that reason we have just held in another action, by the appellant against the appellee, they cannot be recovered. But in this case a very different question arises. It grows out of the 34th section of the by-laws above referred to, and is simply this, whether the appellant has a right to retain out of the money due for the loss, enough to pay the assessments made for the proportion due by the appellee for losses and expenses which occurred during the term of his policy. The money was paid into court, by leave of the court, upon the petition of the appellant, in order to avoid a sale of its property and franchises, upon execution issued on the judgment recovered by the appellee, in his action on the policy against the appellant. It is contended by the appellee, though not so decided by the court below, that the payment was voluntary, and the right

of retention or lien was therefore lost by the fact of payment. We do not think so. Had the money been paid to the sheriff in satisfaction of the execution, the point would have been well taken. But it was not so paid. On the contrary, it was paid into court for the very purpose of avoiding that effect, as we must suppose, and of having it distributed to the rightful owners. The petition under which the money was paid expressly recited that it was claimed by two attaching creditors, one of which was itself, and asked leave to pay it in, to abide the final determination of the attachments, and that the execution be stayed until the attachments are disposed of, or until all the said parties may interplead, " to determine who may be legally entitled to receive said money." The money was received by the court in the manner in which it was tendered, ·" there to abide the further orders of the court for distribution," and " to be awarded and divided as may hereafter be decreed." At the same time the appellant presented a petition to the court, claiming to have distributed to it the sum of $1,159.12, being the amount of assessments levied upon the premium note of the appellee, for losses occurring during the term of his policy, by virtue of a lien under the provisions of the by-laws of the company. Thus it will be seen that the money was paid into, and accepted by the court, for the very purpose of determining the question of the right of the company to retain, or have paid to it out of the fund the amount of the assessments. In such circumstances, of course it cannot be said that in paying in the money the right to have the question at issue determined was parted with. It was also claimed that the decision of the court below in the action to recover the assessments was an adjudication of the claim of lien. That action was necessarily based upon a strict legal right to recover the assessments upon the theory of a direct legal obligation to pay them. We have seen that such an obligation did not exist for the reason stated in our opinion in that case. This right of lien however, is a distinct and independent right existing by virtue of another and different provision in the contract, and hence the determination of the one question does not decide the other. The learned judge of the court below was of opinion, and so ruled, that the appellant was estopped from asserting its right of lien because it had made defence in the action on the policy by the assured, on the ground that certain acts and omissions of the assured had operated to avoid the policy. We find ourselves unable to agree with this view. The policy, notwithstanding the defence made, was adjudged to be of legal efficacy and a recovery was had, and the money now in court is the result of that recovery. Thus the appellee has had the full benefit of his contract, and

9 OUTERBRIDGE.—40.

the fruits of it have been realized. But the company is a mutual one, and the means with which to pay losses are necessarily realized, only by assessments upon the premium notes given by the members. It is a part of the appellee's contract that he will pay his proportion of the losses and expenses which may be incurred during the term of his policy, and as a means to accomplish that end he agrees that in case of a loss under his policy, the company may retain enough of the money coming to him for his loss, to pay future assessments. The money thus to be retained is needed to pay losses sustained by other members, and if it cannot be had, to that extent, such other members must be deprived of the means of obtaining payment for their losses. We cannot perceive any sufficient reason for depriving them of this means of satisfaction simply because the company made defence against the action on the appellee's policy. The defence was made peaceably and legally, through the instrumentalities provided by the law. The company had, or supposed they had, a just defence to the claim, for reasons stated. They certainly had a right to have the sufficiency of their defence determined judicially, and it seems to us it would be a very severe penalty to declare that a defence shall not be made, except upon peril of forfeiting all their rights under the contract, if the contract is sustained. We know of no principle in the law of estoppel which requires such a ruling. In the action on the policy the contract is set up, and its validity and efficacy are asserted. Against the latter certain reasons and matters are asserted which are finally, through the verdict of a jury and the resulting judgment of a court, determined to be insufficient as a defence, and the legal efficacy of the contract is declared. But if this be so, and the contract prevails and is therefore to be enforced, why shall it not be enforced according to its terms? Why shall the assured be permitted to have the benefit of a literal performance of the terms which are favorable to him, without being required to perform the terms favorable to the company? The latter were the conditions upon which his terms were granted. Why shall he have performance except upon the expressed conditions? We know of no reason. It is said the company should have defalked its claim in the action on the policy. But they could not do that since their defence was against any right of action, and if there was no right of action there was nothing to be defalked. Neither could they give notice of the assessments as they were made, because by so doing they would necessarily admit the contract to be in force and deprive themselves of the right to make defence against the policy. Unless the company absolutely forfeited the right to have the contract performed according to its terms if per-

[Appeal of Susquehanna Ins. Co.]

formed at all, merely because they made defence against it, we can see no reason why they shall not be permitted to take from this fund the amount necessary to pay the appellee's portion of the amount required to pay the losses and expenses incurred during the term of his policy. We can see no reason for such forfeiture. In a bill for the specific performance of a contract, although defence is made and liability denied by the defendant, yet if performance is finally decreed, it is only in accordance with the terms of the contract. The defendant is not deprived of the benefit of *his* stipulations because he has made defence. In an action on a bond for the payment of money by instalments, there can be no recovery except in accordance with the terms of the condition. If but a single instalment is due, that only can be recovered, unless it is expressly stipulated that the whole shall fall due upon the non-payment of one. And generally a party to a contract who makes defence against an action upon it, does not thereby *forfeit* any rights under it, except such as are expressly forfeited by its terms. We think it unnecessary to prolong the discussion. It seems to us the appellant should be permitted to take out of the fund in court such sum as will suffice to pay the proportion which ought to be paid by the appellee, of the losses and expenses which were incurred during the whole period of his policy, that is, from October 2, 1876, to October 2, 1881, less such payments as he may have already made upon that account. If the assessments made correctly represent that proportion, their aggregate amount will represent the amount to be taken out. As there is no assignment of error which raises the question of the correctness of those assessments, we have no means of determining that subject. We therefore reverse the case and remand the record for further proceedings.

Decree reversed and record remitted for further proceedings, the fund to be distributed in accordance with the foregoing opinion, the costs of this appeal to be paid by the appellee.