## J. E. THROPP v. SUSQ. MUT. F. INS. CO.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY
COUNTY.

Argued February 4, 1889—Decided April 15, 1889.
[To be reported.]

1. In an action by a mutual insurance company to recover assessments on premium notes, where the evidence is that° the assessments were made for losses only, testimony offered as to the compensation received by officers of the company is irrelevant to the issue and inadmissible.
2. Though there be a variation between the amounts of the assessments as stated in the notices to the defendant, and the amounts proved at the trial, if the errors arose from miscalculation, the variance will not prevent the recovery of the amounts really due ; mere errors in the statement will not destroy the true claim.
3. The refusal by the court of the petition of the company for leave to set off a claim for interest and assessments upon a policy holder's premium notes, against his judgment recovered on the policy for property destroyed, will not bar a recovery of the interest and assessments in a subsequent suit therefor.
4. Where the contract of insurance stipulates for the payment of assessments by the insured during the term of his policy, and provides for a surrender of the policy in case of a sale of the property, and no surrender is made, liability to assessment continues during the term, even after the destruction of the buildings and a sale of the land.
5. For the proper construction of the by-laws of the company as to the manner of making assessments, which was one of the questions involved in this case, reference is made to Susq. M. F. Ins. Co. v. Stauffer, ante, 416.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, McCOL-
LUM and MITCHELL, JJ.

No. 288 January Term 1888, Sup. Ct. ; court below, No. 84 March Term 1884, C. P.

On February 6, 1884, the Susquehanna Mutual Fire Insurance Company brought an action in assumpsit against Joseph E. Thropp, to recover assessments on an interest-bearing premium note given by Thropp to the company, upon taking out a policy of insurance.

On May 25, 1877, Thropp applied to the plaintiff, a mutual

insurance company, for an insurance of $1,100 on certain of his property for the period of five years from that date, and in pursuance of his application signed and delivered the following premium note.

"$560. For value received in policy No. 1491, risk commencing the 25th day of May, 1877, issued by the Susquehanna Mutual Fire Insurance Company, I promise to pay to said company or their treasurer for the time being, the sum of five hundred and sixty dollars, in such portions and at such time or times as the board of directors of said company may, for the purpose of paying losses by fire or lightning and the necessary expenses of said company, agreeably to the act of assembly governing insurance companies, with the various supplements thereto, and the by-laws of the company, require: payable thirty days after demand.

Witness my hand, at Conshohocken, the twenty-fifth day of May, A. D. 1877.

[Signed]　　Joseph E. Thropp."

A policy was duly issued to Thropp and in September, 1877, his property was totally destroyed by fire, but the company refused to pay for the loss. Thropp thereupon brought suit on his policy in the Common Pleas of Dauphin county, and on September 15, 1881, judgment was entered in his favor. On October 3, 1882, the company filed its petition in said court for leave to retain out of the amount due on the judgment, in accordance with the provisions of § 34 of its by-laws, the sum of $249.58, ascertained as follows: Interest $158; assessments, to wit: No. 5, authorized May 1, 1879, $29.70; No. 6, authorized July 8, 1880, $47.03; No. 8, authorized May 1, 1882, $14.85. A rule granted on this petition was afterwards dismissed by said court. Pending the proceeding, on March 19, 1881, Thropp conveyed away his property.

During the pendency of Thropp's suit against the company upon his policy, no notices of assessments were sent to him, but, after its determination, notices of Nos. 4, 5, 6, 7 and 8 were mailed to him at one time, and subsequently notice of assessment No. 9. The notice for this last assessment recited that the amount thereof was $89.10, but it was subsequently admitted that only $59.40 was due thereon. Thropp claimed certain irregularities in these assessments, and did not pay

them, whereupon the company brought this suit for their recovery.

Certain sections of the by-laws of the company relied upon were as follows :

Sec. 31. If at any time hereafter an assessment shall be made, the amount to be levied on premium notes shall be rated according to the following classification, to wit:

First. All premium notes in force at the time the assessment may be declared, shall be liable to assessment for all losses adjusted, unadjusted and unpaid at that time, subject to abatement as hereinafter specified.

Second. All premium notes which have expired, and are not in force at the time such assessment is declared, shall nevertheless be liable to assessment for all unpaid losses which existed at the time of the expiration of such premium note or notes, pro rata with all other premium notes then in force, and the amount thus ascertained and levied upon such expired premium notes to be deducted from the gross amount of liabilities of the company, for which such assessment is to be made, and balance of liabilities then remaining to be assessed upon the premium notes then in force.

Sec. 32. Whenever any member of this company shall alienate or sell any building or other property insured, he may, all assessments being paid, surrender his policy to the secretary, with the request, signed by him, to have the same canceled, and the secretary shall enter the same on record as canceled, to take effect the day the same shall be received by him. In case a part only of the building or other property insured be alienated or sold, such policy may in like manner be surrendered as to such part so sold, and the amount of premium on the building or other property so sold shall be indorsed, after sixty days of the day of surrender, on said member's premium note, or such portion as shall not have been expended or paid.

Sec. 34. In case any buildings, goods or other property insured shall be burned or damaged by fire, the directors shall retain, in the treasurer's hands, the premium note given for the insurance of said property, and also such amount remaining unpaid upon said note, as the board of directors may deem a sufficient security for the payment of assessments of the

assured until the expiration of the policy; and upon such expiration the balance, if any, in the treasurer's hands shall be paid to the assured; provided, however, That should the assured give sufficient security for the payment of all future assessments on policies above referred to, and then in that case, the whole amount of the claim shall be paid in full.

At the trial on March 21, 1887, the defendant's secretary, B. K. Huntzinger, was called to explain the manner in which the assessments were levied, and testified in substance that as far as possible the assessment to pay each loss was laid exclusively upon the notes given for policies in force at the time the loss occurred, and those notes given for policies issued after the loss, but before the assessment was levied, were omitted. The defendant claimed that this method of assessment was not valid, under the by-laws.

On the cross-examination of plaintiff's witness, Mr. Huntzinger, the secretary of the company, the defendant offered to ask the following question:

" We want to know, as secretary of the company what salary you got for 1877 ?"

Objected to.

By the court: Offer refused; exception.[1]

The court, BOYER, P. J., charged the jury and answered the points presented as follows:

On May 25, 1877, Mr. Thropp, the defendant, became a member of the Susquehanna Mutual Fire Insurance Company, which issued to him a policy upon his application of that date on the first of June, 1877, which took effect from the date of his application. He gave the company what is called a premium note in the sum of $560, which was to be held by the company to secure the payment of the assessments which might be lawfully assessed against him. Shortly after his policy was given, Mr. Thropp suffered a loss by the burning down of the insured building. He brought suit against the company to recover the insurance money, and that was resisted by the company, because, as it said, Mr. Thropp had surrendered his policy and had declined to pay the assessments which had been made against him. In this suit, however, it was decided that

Mr. Thropp was still a member of the company at the time the loss occurred, and that what he had done or left undone did not make void his policy. It is not necessary to go into detail in explanation of the points involved in that case. Sufficient to say Mr. Thropp recovered a verdict against the company. Then the company assessed him for the losses which occurred at different times during the life of his policy, that is from the time the policy began to operate until the expiration of the five years for which it was to run. If Mr. Thropp was, as was decided when he recovered the insurance money, a member of the company, it follows he was also liable to be assessed in the company ; for it was part of his contract to submit to all lawful assessments made by the company in order to raise money to pay for the losses of those insured in the company, and for necessary expenses of the company.

It is claimed on the part of the defendant that his policy expired before the expiration of the five years for which it was to run. They say that when the building burned down that canceled the policy. They say further, that he sold the property soon afterwards and ceased upon the execution of that deed to be a member of the company. I instruct you, however, that neither the destruction of his buildings by fire, nor the alienation of the property by deed, of themselves made void the policy. It still continued during the period for which it was taken. Each party must stand by its own bargain. The insurance company is bound to observe the engagements it makes to the insured, and the insured is bound to perform his part of the obligation which he agrees to perform for the company ; and it is not for us to decide in this case whether it was an imprudent bargain or otherwise. The bargain must stand as it was made and both parties are bound by it in all particulars.

The 34th section of the by-laws has been discussed in this case. This same section was construed by the Supreme Court in an appeal in which this company was appellant in 1884 : Susquehanna Ins. Co.'s App., 105 Pa. 623, and Judge GREEN, delivering the opinion of the court, uses the following language : " Although the meaning of this section is not very accurately expressed, its import undoubtedly is, that in case of a loss upon a policy, the company shall retain out of the money due to the

insured for the loss, so much, not exceeding the amount unpaid upon the premium note, as the directors may deem sufficient for the payment of possible future assessments during the continuance of the policy, that is, assessments to which the insured would be regularly subject under the policy. Such assessments would, under the contract of the parties, be for losses occurring during the term of the policy, whether they were actually made before or after the policy expired. This by-law was in force at and before the time when the policy to the appellee was issued. By one of the provisions of the policy, it was agreed that the policy was made and accepted in reference to the by-laws of the company, and also the application and conditions annexed, which are made a part of the policy, and to be used and resorted to, in order to explain the rights and obligations of the parties. By this provision the by-laws in existence at the date of the policy became part of the contract of the parties. There is a proviso annexed to the 34th section of the by-laws, which more fully explains its meaning. It is as follows: 'Provided, however, That should the assured give sufficient security for the payment of all future assessments on policies above referred to, and then in that case, the whole amount of the claim shall be paid in full.' This clearly explains that the insured shall continue subject to all future assessments, although his own policy has practically expired by reason of the destruction of the property insured, and the clause authorizes a substitution of security for the payment of future assessments, in place of a retention of part of the money due on the policy for the loss sustained. By the second clause of the 31st section of the by-laws, it is provided that, 'All premium notes which have expired, and are not in force at the time such assessment is declared, shall nevertheless be liable to assessment for all unpaid losses, which existed at the time of the expiration of such premium note or notes, pro rata with all other premium notes then in force.' Under this clause it is manifest that assessments may continue to be made upon premium notes which have expired, for all losses which occurred while the notes were in force. In addition to this, the policy contains a provision that, 'the insured has deposited a premium note subject to the payment of such assessments as may be made thereon for the purpose of paying losses and necessary expenses of the company occurring

Charge of Court below.

during the term of this policy.' Whatever may be said in reference to the reasonable or unreasonable character of a contract with such provisions, it is enough for the purposes of this case to know that the contract of these parties is of this character. We see nothing contrary to public policy in it, nor are we aware of any other consideration affecting its validity on this account, and therefore, so far as the courts are concerned, they are bound to enforce it as they find it."

Mr. Thropp, under another section of the by-laws of this company, might have surrendered the policy after he had sold the property. The 32d section is as follows : . . . . . Here then is a by-law which expressly provides for the circumstances with the manner in which the policy of insurance may be surrendered in case the insured sells the property. But it is expressly provided that the cancellation of the policy shall take effect the day the same is received by the secretary. There is no evidence in this case of the compliance on the part of Mr. Thropp with the requirements of this section. He did not surrender his policy ; it was not received by the secretary from him for this purpose ; and therefore for all practical purposes it remained in existence until the expiration of its term, and Mr. Thropp was liable under his contract to pay the assessments for losses which occurred at any time between May 25, 1877, and May 25, 1882. It will be for you to inquire whether the assessments which have been made in this case were made for losses which occurred between those dates, and whether they were regularly made by the company.

But it is contended on the part of the defence that the plaintiff is precluded from a recovery of these assessments, inasmuch as it attempted to have them set off against the verdict obtained by the defendant for the insurance money in Dauphin county. A proceeding for that purpose, commenced by petition on the part of the company, has been given in evidence, and it appears that the court decided that it was not entitled to retain in its hands at that time the amount of these assessments. It had paid over, after Mr. Thropp had been successful in his suit, the amount which he recovered, less the amount of the assessments which were claimed against him, and its petition was to have set off against the verdict these assessments, so that the judgment might stand only for the balance, and the court granted

a rule to show cause why this should not be done, and afterwards dismissed the rule. It is said on the part of the defence that this estops the plaintiff from a recovery of these same assessments in this suit. It does not appear from the record before the court upon what ground the court made its decision and dismissed the rule; but it also appears that, at the time, the plaintiff was not in a condition to claim the retention of these assessments, because it had not at that time given notice to the defendant, Mr. Thropp. The case was decided February 7, 1883, and notice of these assessments was not given to Mr. Thropp until October 8, 1883, and the decision of the court in disallowing the company to retain these assessments out of the amount of the verdict might readily have been based upon that ground; and therefore the company was not in a condition in which they were entitled to enforce its rights for the collection of these assessments, supposing it to have been entitled to them. I rule, therefore, that those proceedings in Dauphin county court do not estop the plaintiffs in this case from recovering the assessments which they claim, provided they have been lawfully assessed. . . . .

I look to the record of the proceedings themselves and upon that I rule that those proceedings do not estop the plaintiff in this action, and the question of fact for you will be as to whether when these assessments were made, they were made within the period of the life of the policy and whether they were made according to the by-laws of the company. You have heard the testimony in relation to the manner in which they were made, and you have heard the arguments of counsel upon that subject. In the first place assessments made by a board of directors of a mutual company like this are supposed to be regularly and lawfully made. But the defendant has filed in this case an affidavit which put upon plaintiff the necessity to show how they were made, in order that the court and jury might judge whether they were lawfully made or not. [If they were made according to the basis, as detailed to you by the secretary, who was a witness in this case, they were made in a regular manner, unless you can find by the evidence that they were fraudulently made or were grossly in excess of what was needed to meet the liabilities of the company.] [2] In judging of these subjects a reasonable latitude must be allowed to

the directors in levying their assessments. They have a right to take into consideration the financial condition of their different members who are insured, and calculate the probabilities as to whether certain assessments can be collected or not; and, if it happen that a large number cannot probably be collected, they have a right in adjusting their basis to take that fact into consideration, allow for it and fix the basis accordingly. If they acted fraudulently or with wanton injustice and partiality, their assessment would be void; but in order to find that it will be necessary for the jury to determine by the testimony that such is the case. Fraud must always be proved; it cannot be assumed, and therefore the jury can only draw that inference from testimony which clearly convinces them that fraud has been exercised, or that the directors had wantonly or from gross mistake made assessments excessively disproportionate to the needs of the company. Is there any evidence in this case that more money was raised than was needed for the expenditures? If there is no testimony of that kind, it is for you to take into consideration that there is no surplus fund, and that fact may be used in determining whether or not the assessment actually was excessive, and in order to make it void, it must be grossly excessive. You will have the books and papers which have been given in evidence with you; you can examine them at your leisure, and upon these questions they may be used to determine the fact, taking into consideration the explanations which have been made, and giving them that weight which you consider them entitled to.

At this stage I will answer the points which have been submitted to me upon either side. The plaintiff asks me to charge you as follows:

1. That the claim made by the plaintiff company in the suit of Joseph E. Thropp, the present defendant, as plaintiff, against the plaintiff, as the defendant, was not made for the same claim as in the present suit, and therefore the adjudication of that case has no effect in the present suit.

Answer: This is true.[3]

2. That the discharging of the rule in the suit of Thropp v. Susquehanna Mutual Fire Insurance Company of Harrisburg, Pa., brought October 30, 1877, in the Common Pleas of Dauphin county, was not such an adjudication of the right of the plaintiff as to defeat a recovery.

Answer: This the court has already answered in the general charge, and this point is affirmed.[4]

3. That the defendant is liable for all assessments on his note for losses and costs of running of the company that accrued during the term of his policy, which includes losses sustained after his property was destroyed by fire, and after the alienation of the real estate on which the insured property had been erected.

Answer: This is affirmed.[5]

4. That neither the destruction of the property by fire, nor the subsequent alienation of the property on which that insured property was erected, can defeat the right of the plaintiff to recover in this action.

Answer: This is also affirmed.[6]

5. That there is no evidence that there was any fraud in the making of the assessments, nor that the assessments were not made according to law and for a proper share of the assessment of defendant as corrected on this trial. Fraud is never presumed; it must be proved.

Answer: This is affirmed, unless the jury should find from an examination of the books or papers in the case that there was something to enlighten them and enable them to find fraud; but if the explanations of the secretary are believed, then there is no fraud in this case.[7]

6. That the notices given of these assessments were in proper form, and the mere variation in the amounts does not prevent the plaintiffs from recovering the same.

Answer: This is true. The plaintiffs are entitled to recover what the defendant was legally obliged to pay. And if any of the assessments are found to be erroneous, the jury can deduct from them the amount which they find to be in excess.[7 1-2].

7. That under all the evidence in the cause, the plaintiff is entitled to a verdict for $495; being for regular assessments 4, 5, 6, 7, 8 and 9, with interest from November 8, 1883, being thirty days after the notice of the assessment.

Answer: Inasmuch as some of the facts are left to the jury, it would be improper for the court to give them a positive instruction that their verdict should be for $495; but for whatever amount they find due, there can be interest added from November 8, 1883.[8]

The defendant has also requested me to instruct you upon the following points :

1. If the notice of assessments, or any of them, specify an assessment for more money than the defendant is liable to pay under his contract, then the jury cannot find for the plaintiff for any part of such assessment.

Answer : If the jury find an error in the assessment, arising from any mistake in calculating the amount, they can reduce it accordingly ; but an error in that respect would not enable the defendant to defeat the assessment altogether, if he was liable for a part of it.[9]

2. If the jury find that the defendant was liable to contribute the sum of $59.40 toward the loss covered by assessment No. 9, and that the notice to him of such assessment was for $89.10, or any other sum greater than $59.40, then the plaintiff cannot recover for any portion of said assessment.

Answer : This is not affirmed ; as I before instructed you, the plaintiffs can recover for what you find to have been actually due.[10]

4. If the jury find that the notice of assessment No. 5, authorized May 31, 1879, gave notice to the defendant that he was assessed in an amount, part of which he was not liable to pay, then the jury cannot find for the plaintiff for any part of said assessment.

Answer : I instruct you in regard to this point as I have instructed you in regard to the preceding points. The plaintiff would be entitled to recover the true amount of the assessments for which the defendant is liable.[11]

5. If the jury find that any premium notes liable for contribution toward the payment of any losses were omitted in the basis for assessment, or the actual assessment to pay such losses, then the assessment is illegal and void.

Answer : It would be illegal and void as to that part which was erroneous, and so far as it would increase the amount for which the defendant was justly liable.[12]

6. That the omission to include in the assessment levied to pay a loss, the notes of any policies current at the happening of such loss, is prima facie evidence that the assessment is fraudulent.

Answer : This is so, if it appeared that the amount was pur-

posely omitted with a fraudulent intent of defrauding the defendant.[13]

8. That alienation of the property insured terminates the contract, and the insured is not liable to contribute towards· subsequent losses.

Answer : That is not correct as applicable to this case, inasmuch as there was no attempt on the part of the. defendant to surrender his policy and have it canceled, as provided for by the by-laws.[14]

9. That the plaintiff, by its petition filed in the Common Pleas of Dauphin county, in the suit of Thropp v. Insurance Company, No. 430 November Term 1877, in which it asked leave to retain all of the money found by a verdict therein to be due the said Thropp, the amount claimed by it to be due from him for all losses occurring during the life of his policy, has submitted its claim to the adjudication of a competent tribunal ; and that tribunal having decided against it, it cannot maintain its claim for the same alleged liability in another and subsequent suit.

Answer : This is not affirmed, for the reasons given in the general charge.[15]

\*          \*          \*          \*          \*          \*          \*          \*

The jury returned a verdict for the plaintiff for $595.23 and six cents costs ; and a new trial having been subsequently refused and judgment entered on the verdict, the defendant took this writ, assigning for error :

  1. The refusal of defendant's offer.[1]
  2. The part of the general charge in [  ][2]
  3-8. The answers to plaintiff's points.[3 to 8]
  9-15. The answers to defendant's points.[9 to 15]

*Mr. Louis M. Childs* (with him *Mr. Montgomery Evans*), for the plaintiff in error :

1. The purpose of the evidence referred to in the first assignment of error was to show that in the amount for which these assessments were levied was included money illegally paid by the directors, and for the payment of which the defendant could not be legally assessed. The act of March 31, 1860, § 66, P. L. 400, makes it unlawful for any member of a board of directors of a corporation to hold any position subor-

dinate to the board to which a salary is attached: Loan Association v. Stonemetz, 29 Pa. 534. Any assessment by a mutual insurance company upon its members must be for money which the company is legally liable to pay, otherwise it is invalid.

2. The language of the court referred to in the second assignment was error. The secretary in his testimony showed that these assessments were all made in the following manner: As far as it was practicable to do so, the assessment to pay each loss was laid exclusively upon the notes given for policies in force at the time the loss occurred, and those given for policies issued after the loss, but before the assessment was levied, were omitted. The by-law of this company relative to assessments has been construed by this court in Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492. There the court says: " The plaintiff concedes that the policies in force at the time the assessment was declared, which were not in force at the time the losses and liabilities were incurred, were not included in the assessments. Its secretary, called to prove the claim, testified that there were a large number of such policies, and that they were not included. It follows that assessment ' No. 9 ' was invalid, and that the court rightly ruled the plaintiff could not recover." As all of the assessments upon which this suit is brought were levied in the same manner as was assessment " No. 9," in that, they were all invalid, and the court below was clearly in error.

3. Where an insurance company gives notice to a policy holder that he has been assessed for one amount, it cannot at the trial prove him to be liable for another and be allowed to recover the latter. Under the by-laws, giving notice of the amount due from the policy holder is a prerequisite to bringing suit for an assessment: Buckley v. Insurance Co., 83 Pa. 298; Susq. M. F. Ins. Co. v. Staats, 4 Penny. 313. A policy holder may ignore a notice when it shows an assessment to pay losses for part of which he is not liable: Susquehanna Ins. Co. v. Toy Co., 15 W. N. 306. The omission of notes liable to assessment, from the actual assessment, renders the assessment illegal and void: Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492; Marblehead Ins. Co. v. Hayward, 3 Gray 208; Herkimer Co. Ins. Co. v. Fuller, 14 Barb. 373.

4. The refusal of the plaintiff's petition to set off the assessments against the judgment recovered by the defendant against

it in Dauphin county, was an adjudication of the plaintiff's claim under assessments 5, 6 and 8 : Susq. Ins. Co.'s App., 105 Pa. 615 ; Hinds v. Willis, 13 S. & R. 213.   Moreover, by the sale of his property on March 19, 1881, the defendant ceased to be a member of the company defendant : Wilson v. Insurance Co., 19 Pa. 372.

*Mr. Chas. Hunsicker*, for the defendant in error : .

1. The by-laws were correctly construed by the court.   In the case of Susq. M. F. Ins. Co. v. Gackenbach, 115 Pa. 492, the Supreme Court was misled by an incorrect quotation of the by-law.   [See Susq. M. F. Ins. Co. v. Stauffer, ante p. 416.]

2. By the sale of the defendant's property, he did not cease to be a member of the company, because he did not surrender his policy as required by § 32 of the by-laws : Cummings v. Sawyer, 117 Mass. 30 ; Insurance Co. v. Congregational Society, 117 Mass. 199 ; Neely v. Insurance Co., 7 Hill 49 ; Smith v. Insurance Co., 3 Hill 508 ; New England M. F. Ins. Co. v. Belknap, 9 Cush. 140.   These cases in connection with Susquehanna Mutual Fire Insurance Co.'s App., 105 Pa. 626, the decision in each case being based upon the contract, destroy the single case of Wilson v. Insurance Co., 19 Pa. 372, cited on the other side.

OPINION, MR. JUSTICE MITCHELL :

The principal question of law raised in the present case was upon the validity of the assessments made by the defendant in error.   The case was tried before the publication of the opinion of this court in Insurance Company v. Gackenbach, 115 Pa. 492, and the rulings of the learned judge below were at variance with the decision in that case.   On an examination, however, of a correct copy of the by-law under which the assessments were made, it has appeared clearly that this court, speaking through our late brother TRUNKEY, was misled by an incorrect copy in the record of that case, and the mistake has been rectified in the opinion in Susquehanna M. F. Insurance Company v. Stauffer, filed herewith.   [See ante p. 416.]

The main contention in the present case having been thus settled, the others can be disposed of without difficulty.

The first assignment of error is to the refusal to permit the

defendant to ask the secretary what salary he received in the year 1877. It is sufficient to say that the relevancy of the question was not apparent from any evidence then in the case, nor was any offer made to follow the question with such evidence. The ground assigned here was not pointed out to the judge at the trial, nor is the evidence shown to us which would support it. The evidence is that the assessments were made for losses only, and whether the secretary or directors improperly received compensation for their services, though important to the policy holders as members of the association, was not relevant to the issue on trial.

Several of the assignments relate to the variance between the amounts of the assessments as stated in the notices to the defendant, and the amounts, as proved at the trial. The instruction by the learned judge below, that an error in the amount arising from miscalculation, would not prevent the plaintiff from recovering the amount really due, was entirely correct. Mere errors of statement of amounts do not destroy the true claim.

Other assignments raise the question whether the refusal of the Court of Common Pleas of Dauphin county to allow the company to set off or defalk its claims for interest on defendant's deposit-note, and the assessments then due, was an adjudication which barred these items in the present action. It is difficult to see why it should do so. It was not an adjudication of the right of action on the assessments, but of the company's right to use them in payment of a particular judgment. Set-off against a judgment is not of right, but of grace, and is only granted where a special equity is shown to justify it. What reasons moved the Dauphin county court in its refusal, we do not know, nor is it material that we should. It is sufficient that the adjudication was not upon the claims as a cause of action. Susquehanna Ins. Co.'s App., 105 Pa. 615, is not contrary to this view, as in that case the court simply distributed a fund paid in for the very purpose. Even if it had gone further, and decided that under the circumstances equity would allow the set-off against a judgment, it would not now follow that the refusal of the Dauphin county court to allow the set-off in this case, was an adjudication of the right of action. In the very case in 105 Pa. it was held that even a previous action

for the assessments, and judgment against the company therein, were not a bar to the company's claim on the assessments, inasmuch as it was shown that the failure of the plaintiff was for want of notice of the assessments given to the defendant in the action.

The only remaining question is, whether the destruction of the buildings by fire and the subsequent sale of the land, terminated plaintiff in error's liability to further assessments. It may be conceded, that ordinarily and in the absence of a special contract, this result would follow, as held in Wilson v. Insurance Co., 19 Pa. 372, but it is quite clear that the law of this case is otherwise. The contract stipulated for the payment of the assessments that should be made for all losses *during the term of the policy*, without regard to the destruction of the property, or other hardships. There was a provision for surrender of the policy in case of sale of the land, but no surrender was made under it. In the language of our brother GREEN, in 105 Pa. 624, " whatever may be said in reference to the reasonable or unreasonable character of a contract with such provisions, it is enough for the purposes of this case to know that the contract of these parties is of this character. . . . . If parties make such contracts they must be bound by them."

The case was well tried by the learned president of the Common Pleas, and the questions arising in it properly ruled.

The judgment is affirmed.