# SUSQUEHANNA M. F. INS. CO. v. J. L. LEAVY.

APPEALS BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 25, 1890—Decided October 6, 1890.
[To be reported.]

1. When a contract provides that it shall become void on default in its performance by one of the parties, such party cannot take advantage of his own wrong by setting up such default, alone, as a means of escaping liability under the contract, unless its terms are clearly to this effect.

136 499
136 519

136    499
26 SC 273

136    499
31 SC [2]296

136    499
f 34 SC [1]525

Statement of Facts.

2. An insurance policy provided that on thirty days' default in the payment of interest, or any assessment, on the premium note given therefor, the policy should cease: this stipulation being for the insurer's benefit, the company might waive it, and collect assessments levied after as well as before such default.

3. Moreover, such levy and collection are clearly authorized by a by-law which provides that, notwithstanding a failure of the insured to pay the interest and assessments, the directors shall retain the premium note and collect thereon all sums due or to become due during the term for which it was originally given.

4. When a policy issued by a mutual company of which all the insured are members, is expressly made and accepted "with reference to the by-laws of the company . . . . . which are made part of the policy," the policy holder is presumed to have knowledge of and is bound by a by-law, though not appended to the policy.

5. The construction given to the by-laws of the Susquehanna Mut. F. Ins. Co., as to the order and manner in which different classes of policies shall be assessed for losses, in Susquehanna Ins. Co. v. Stauffer, 125 Pa. 416, and Thropp v. Insurance Co., 125 Pa. 427, reaffirmed and followed: Susquehanna Ins. Co. v. Gackenbach, 115 Pa. 492, distinguished.

(a) A by-law provided that premium "notes subject to the payment of annual interest, and deposit notes upon which the interests have been paid in advance," should not be assessed until all other notes should have paid assessments equal to the interest paid and to be paid within the next succeeding six months:

6. A premium note subject to the payment of annual interest, upon which no interest has ever been paid, although more than a year has elapsed since its date, is not within the excepted class of notes, and is liable to regular assessment in the first instance.

7. When different classes of premium notes are all to be assessed ratably, and their amounts vary according to the form of the policy, the equitable and proper method of assessment is, not by percentages upon their face, but upon the basis of the rating of the risk, applied to the amount insured.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Nos. 382 and 383 January Term 1890, Sup. Ct.; court below, Nos. 244 June Term 1879, 581 September Term 1887, C. P.

On May 12, 1879, there was entered in the court below, by appeal from the judgment of a justice of the peace, an action brought by the Susquehanna Mutual Fire Insurance Company against James L. Leavy, to recover the amount of an assessment levied by the plaintiff, upon a premium note given by

the defendant to the plaintiff in consideration of a policy of insurance. The defendant's pleas were non-assumpsit and payment with leave.

On August 24, 1887, the same plaintiff brought assumpsit against the same defendant for the amounts of several additional assessments upon the same premium note. In this action the defendant pleaded non-assumpsit.

The two cases were tried together on May 15, 1889, when the following facts were shown upon the part of the plaintiff:

On September 21, 1876, the defendant made application in writing to the plaintiff company for a policy of insurance against fire and lightning, to continue for three years, on his hotel property in Curwensville, in the sum of $2,500. Attached to the application was the following premium note:

"$825.00. For value received, in Policy No. 1006, risk commencing the 21st day of September A. D. 1876, issued by the Susquehanna Mutual Fire Insurance Company, I promise to pay to said company, or their treasurer, for the time being, the sum of Eight Hundred and Twenty-five Dollars, in such portions and at such time or times as the directors of said company may, for the purpose of paying losses by fire or lightning and the necessary expenses of said company, agreeably to the act of assembly governing insurance companies, with the various supplements thereto, and the by-laws of the company, require, payable within thirty days after notice and demand.

"Witness my hand at Clearfield the 21st day of September A. D. 1876.　　　　　　　　　　　JAMES L. LEAVY."

At the time of making the application the defendant paid to the plaintiff $49.50.

On September 23, 1876, the policy applied for was issued by the company, was numbered 1006, and contained the following clauses:

"In addition to the cash premium, the insured has deposited a premium note subject to the payment of six per cent interest annually; and agrees to pay all such assessments as may be made thereon for the purpose of paying losses and the necessary expenses of the company, occurring during the term of this policy, in conformity with Application No. 1006, signed by the assured and on file with this company, which is made a part of this policy; . . . ."

Statement of Facts.

"And it is moreover agreed and declared, That this policy is made and accepted in reference to the by-laws of this company; also the application and the conditions hereto annexed, which are made a part of this policy, and to be used and resorted to, in order to explain the rights and obligations of the parties hereto."

Among the conditions of insurance, referred to in the policy and indorsed upon it, was the following:

"5. No insurance shall be considered as binding until the actual cash payment of the premium; and should the annual interest, or any assessment that may be levied on the premium note given for this insurance, be in arrears and unpaid for the space of thirty days after notice and demand, then, and in every such case, this policy shall cease."

The by-laws of the company, in force at the time the policy was applied for and issued, provided as follows:

"Sec. 25. If any assessment that may hereafter be levied on a premium note be and remain unpaid after the day fixed by the secretary for the payment of the same, shall render absolutely void all policies on which the assessment may remain unpaid as above, and be a full bar against such defaulting member for all losses that may occur during the time the assessment may so remain unpaid; and the directors shall retain such premium note or notes and collect thereon all such sum or sums as may be due or become due thereon, during the term for which it has originally been given."

"Sec. 30. If at any time hereafter an assessment shall be made, the amount to be levied on premium notes shall be rated according to the following classification, to wit:

"First. All premium notes in force at the time the assessment may be declared, shall be liable to assessment for all losses unadjusted and unpaid at that time, subject to abatement as hereinafter specified.

"Second. All premium notes which have expired and are not in force at the time such assessment is declared, shall, nevertheless, be liable to assessment for all unpaid losses which existed at the time of the expiration of such premium note or notes, pro rata with all other premium notes then in force, and the amount thus ascertained and levied upon such expired premium notes to be deducted from the gross amount of

liabilities of the company, for which such assessment is to be made, and balance of liabilities then remaining to be assessed upon the premium notes then in force.

"Third. Notes subject to the payment of annual interest, and deposit notes upon which the interests have been paid in advance, shall not be assessed until all other notes held by the company, liable to assessment, shall have first paid in assessments an amount equal to the interest paid and to be paid within the six months next succeeding the date of such assessment; any deficiency then existing may be equitably assessed on all the notes held by the company."

The following amendment was adopted on April 3, 1877:

"Hereafter all assessments by this company, to be made in conformity with the 'all cash' rates on properties of similar character, and that the secretary be required to adjust or fix the basis, for the purpose of assessing, at twenty times the annual 'all cash' premiums, irrespective of the amount of the premium notes held by the company on property insured, and on which assessments may be made."

A new set of by-laws, adopted January 21, 1879, contained the following provisions:

"Sec. 26. All persons insuring in this company, or who may have policies assigned to them, shall thereby become members of this company during the term of their policy or policies, and shall stand bound and obliged to pay all such assessments as may be made on their premium notes or policies of insurance, in accordance with these by-laws. All assessments that may be made, shall be based on the annual 'all cash' or 'schedule' premiums, and the basis for assessments shall be fixed at twenty times such 'all cash' or 'schedule' premium.

"Sec. 27. If, at any time hereafter, an assesssment shall be made, the amount to be levied on premium notes, or policies of insurance, shall be rated according to the following classification, to wit:

"First. All members whose policies are in force at the time the assessment may be declared, shall be liable to assessment for all losses adjusted, unadjusted and unpaid, and all other liabilities then existing against the company, subject to abatement as hereinafter specified.

"Second. All members whose policies have expired and are

not in force at the time such assessment is declared, shall, nevertheless. be liable to assessment for all unpaid losses and other liabilities which existed at the time of the expiration of such policy or policies, pro rata with those then in force, and the amount thus ascertained and levied upon such expired policies, to be deducted from the gross amount of liabilities of the company for which such assessment is to be made, and balance of liabilities then remaining to be assessed upon the policies then in force.

" Third. Notes received previous to February 1st, 1879, subject to the payment of annual interest, and deposit notes upon which the interests have been paid in advance, shall not be assessed until all other notes held by the company, liable to assessment, shall have first been assessed an amount equal to the interest paid, and to be paid, within the six months next succeeding the date of such assessment; any deficiency then existing may be equitably assessed on all the notes held by the company.

" Sec. 28. If any member neglects or refuses . to pay any assessment that may be levied on a premium note, policy of insurance or adjusted basis, on or before the day fixed by the secretary for the payment of the same, then, and in every such case, the policy given upon such note, or other obligation, shall be void until the assessments be or are actually paid; and no member shall be entitled to recover from this company for any loss that may happen under a policy on which the assessment may or shall so remain unpaid; nevertheless, such member or members shall be liable for all assessments which may be levied during the suspension of such policy on account of the non-payment of a previous assessment; and the directors shall retain such premium note, or other obligation, and collect the amount so assessed."

" Sec. 30. Policies issued after February 1st. A. D. 1879, on the 'interest plan,' shall be exempt from all assessments beyond the amount of interest on the deposit notes, at the rate of six per cent per annum, during the term of each and every policy, and the admission premium of five per cent on the deposit notes for either a three or five year policy, and of seven and one half per · cent for a ten year policy. The deposit notes for such policies are to be taken for fourteen times the annual cash rate premium."

At various times between July 13, 1877, and June 4, 1887, assessments were levied upon the defendant's premium note, to provide for the payment of expenses and losses incurred during the term of his policy. Those assessments aggregated $866.25. The suit at No. 244 June Term 1879, was brought to recover an assessment, designated as regular assessment No. 4, levied September 13, 1878, for $97.50. The suit at No. 581 September Term 1887, was for the amounts of seven others, designated as regular assessments Nos. 7 to 14, aggregating $341.25, levied at intervals between August 15, 1881, and June 4, 1887. Upon the levying of each of these assessments, notice thereof was given by the company to the defendant.

The method of calculating and levying the assessments pursued by the company, was described by its secretary, B. K. Huntzinger, testifying for the plaintiff, in substance as follows:

The company issued two kinds of assessment policies, known respectively as "regular assessment" and as "interest" policies. In the case of the former, premium notes were taken usually for a sum equal to the whole amount of the insurance. In the case of the latter, the principal of the premium notes was fixed at eleven times the "premium note," which varied with the character of the risk, and such note would bear interest, payable annually. In order to make an equitable apportionment of the assessments between the different kinds of policies, the amount of the assessment levied on each particular policy was fixed, not by a percentage of the face of the premium note, but upon the basis of the premium rate for the risk. What was known as the "assessment basis" was calculated for each policy by multiplying the premium rate by twenty, and the assessments were then made by percentages of the assessment basis, so ascertained. Thus, the premium rate upon the defendant's policy was 3 per cent, and the amount of his insurance was $2,500; 3 per cent of $2,500 is $75, and that sum, multiplied by twenty, gives, as the assessment basis for that policy, $1,500. Assessment No. 4, above mentioned, was laid at the rate of 6½ per cent. The defendant's proportion of it was therefore 6½ per cent of $1,500, making the amount payable by him $97.50. The other assessments sued for were levied in the same manner.

These different assessments were laid, proportionately, according to the assessment basis, upon all the regular assessment policies in force at the time of the losses to be provided for, and upon all interest policies, in force at the same time, the holders of which had not paid up the interest thereon, except certain policies the holders of which were insolvent at the dates of the assessments. In any case where the interest was paid up, it would be a credit on the assessment in favor of the policy holder. The defendant's policy was an interest policy, but as he had never paid any interest, his policy was assessed in the same manner as a regular assessment policy.

At the close of the testimony for the plaintiff, the court, KREBS, P. J., on motion of the defendant, entered judgments of compulsory nonsuit, stating as the grounds thereof, (a) that, under the testimony for the plaintiff, the assessments sued for were not so levied as to be in compliance with the terms of the contract between the parties; and (b) that the condition of the policy providing that it should cease if the annual interest or any assessment should "be in arrears or remain unpaid for the space of thirty days after demand and notice," was a bar to the recovery of the assessments in suit.

Rules to take off the nonsuits, after argument, were discharged, KREBS, P. J., filing an opinion which, after reciting the facts, and holding that the by-laws of 1879 could not affect the legal rights of the parties to the contract, inasmuch as there was no evidence that the defendant had ever received notice of or assented to the change, citing on this point Insurance Co. v. Connor, 17 Pa. 136, proceeded as follows:

The question for consideration is, does the contract between the parties authorize this method of assessment?

The policy is admitted by the company to be an interest-bearing policy, and the premium note accompanying the policy is an interest-bearing note, the amount of the note being fixed by rates and rules differing widely from the method of fixing the amount of the note accompanying a regular assessment policy. But in addition to this, the policy and the premium note both provide that the by-laws shall be taken as part of the contract; and the note particularly declares that the assured

shall pay " the sum of $825 in such portions and at such time
or times as the directors of the company may for the purpose
of paying losses by fire or lightning and the necessary expenses
of the company, agreeably to the act of assembly governing
insurance companies, with the various supplements thereto, and
the by-laws of the company, require, within thirty days after
notice and demand."

As has been seen, the third clause of § 30 of the by-laws of
June, 1876, makes distinct provision for this class of policy,
interest-bearing. It is admitted by the secretary of the com-
pany that the assessments sued for, were not levied in accordance
therewith. By what right or authority in law has the company
the power to levy assessments, other than according to the
letter of the contract between the assured and the company?
It is alleged that the assured did not pay the interest on this
premium note, and therefore the company assess it as a "regu-
lar assessment" policy. But there is no provision anywhere
that I can find in the papers and by-laws, which go to make up
the contract between the parties, that confers this power on the
company. The assured by the terms of the note agreed to pay
$825 in such portions as the directors might determine. How?
In accordance with the statutes regulating insurance and the
by-laws of the company; and the company is as much bound
by the contract thus made and entered into as the assured.
These assessments are not made on the note of $825, but upon
an adjusted basis of $1,500. The assessment No. 4 is $97.50,
or $6\frac{1}{2}$ per cent on $1,500; while on the note it would be
$53.62\frac{1}{2}$.

In the case of Insurance Co. v. Connor, 17 Pa. 142, Lewis, J.,
says: " If he (Connor) neglected to pay interest on his note,
the remedy provided was to call in the principal. Poverty,
accident, illness, and various circumstances beyond his control,
may prevent the payment of interest without any wilful default.
Under such circumstances, the remedies existing at the time of
the contract, or such as the law may provide for enforcing the
payment, are all that can be resorted to." It was no more
difficult for the company to levy the assessment in the method
pointed out by the third clause of by-law, 1876, § 30, and sue
the assured, than it was to levy the assessment in the manner
admitted by the testimony of Mr. Huntzinger. Their attempt

Opinion of Court below.

to change the mode would in effect change the entire form of contract, and cannot be permitted.

As has been already noticed, all the assessments sued for are levied in the same way as if upon a "regular assessment" policy, and not, as in fact they should have been, upon an interest-bearing policy. Nor, can it make the slightest difference in reaching a decision of the question, that the amount of assessment should be the same by both methods. In the very nature of things, under the by-laws this could not be so, for the notes on the different policies vary largely in amount. These assessments not having been made in accordance with the by-laws as pointed out, cannot be recovered in these actions.

Another reason stated for entering the nonsuit at the trial, was that the by-laws applying to these cases, namely, June 6, 1876, fell within the construction placed upon what was before the Supreme Court in Susquehanna Ins. Co. v. Gackenbach, 115 Pa. 492. As has been remarked, the by-laws of this company that were before the Supreme Court in the case, Susquehanna Ins. Co. v. Stauffer, 125 Pa. 416, and there construed by MITCHELL, J., are the by-laws of January 21, 1879, not applicable to this case. They differ in some parts; whether materially or not, it is not necessary to discuss, under the foregoing views we have reached in this case.

There is, however, a condition annexed to this policy which was noticed at the trial. The policy provides : " And it is moreover agreed and declared, That this policy is made and accepted in reference to the by-laws of this company; also the application and the conditions hereto annexed, which are made a part of this policy," etc. On the back of the policy are found indorsed these words: " Conditions of insurance," and under the fifth paragraph or clause are found these words : " No insurance shall be considered as binding until the actual cash payment of the premium; and should the annual interest, or any assessment that may be levied on the premium note given for this insurance, be in arrears and unpaid for the space of thirty days after notice and demand, then, and in every such case, this policy shall cease." The interest on the premium note is made payable annually. It does not say in advance, and therefore we infer the first annual interest fell due on September 21, 1877; and if the company made demand then, it

became due under this condition on November 21, 1877, and nothing being paid under this condition of the contract, which the assured had before him, and the only one he had, the policy ceased.

It is true that § 25 of the by-laws of June 6, 1876, provide this: " If any assessments that may hereafter be levied on a premium note be and remain unpaid after the day fixed by the secretary for the payment of the same, shall render absolutely void all policies on which the assessment may remain unpaid as above, and be a full bar against such defaulting member for all losses that may occur during the time the assessment may so remain unpaid ; and the directors shall retain such premium note or notes and collect thereon all such sums as may be due or become due thereon, during the term for which it has originally been given." Now, then, the policy, with the condition referred to, was put into the hands of the assured. He knew, therefore, that if he did not pay his interest or assessments, he forfeited his policy and the contract ceased. The company was absolved from all liability and he lost his advance premium. But we are met with the contention that the by-law must also be taken into consideration. This cannot and ought not to be so held. The company puts one condition before the assured, and says to him: " This is our contract; if you do not pay, the policy ceases," and withholds from him the other. Good faith, good morals, and good law, all require that the whole of the by-law should be put into the conditions on the policy and not a part only.

It is frequently found, indeed, all reputable mutual insurance companies that have this by-law, print it as a condition on the back of the policy, and thereby put it within the full knowledge of the assured. It is true, that the assured is a member of the company, but we all know that these mutual insurance companies are run and controlled entirely by the directors and officers, and that the membership, scattered far and wide, are no more actual participants in the management of the company than if they were not insured therein. This membership is a mere fiction in law.

We say, then, that this company is bound by this condition of the policy, and if there was a default in payment of assessment or interest, this policy ceased and ended, and assessments

Arguments.

could not legally be made after that date. But conceding, for the sake of argument, that the condition of the policy and by-law are to be read together, then this policy, under the testimony, would cease on November 21, 1877, and, under the by-law, it could be assessed only upon the plan or method relating to interest policies.

It is contended also, on the part of the defendant, that there is no evidence of the delivery of the policy to the defendant. He denies that he ever accepted it. We do not think it necessary to notice this point now. For the reasons given, we must decline to take off the nonsuit in this case. We have discussed the case at some length, so that upon a review by a higher court, the exact controversy here may be settled, and whatever that may be we shall gladly accept it as final.

Now, February 26, 1890, motion to take off compulsory nonsuit refused.

Thereupon the plaintiff took these appeals, specifying, inter alia, that the court erred:

1. In directing the judgments of nonsuit.
2. In refusing to take off the nonsuits.

*Mr. Thomas H. Murray* and *Mr. R. D. Swoope* (with them *Mr. Cyrus Gordon*), for the appellant:

We maintain that under the by-laws in force at the date of the policy, the assessments were good and valid, and entitled the plaintiff to recover. Three principal propositions are involved in the assignments of error:

1. The assessments made in the first instance upon the policies in force at the time of the loss, to the exclusion of those in force at the time of the assessment, but not at the time of the loss, were in strict conformity, in this respect, with the requirements of clauses 1 and 2 of § 30 of the by-laws adopted June 6, 1876. If this by-law is substantially the same as that enacted in 1879 and passed on in Susquehanna Ins. Co. v. Stauffer, 125 Pa. 423, this proposition is sustained, and the two differ, as to this point, in no respect whatever. Again, in Thropp v. Insurance Co., 125 Pa. 427, which was decided under the by-laws of 1876, this identical question was raised by the second assignment of error, and the validity of the assessments,

Arguments.

some of which were the same assessments involved in the present case, was sustained.

2. The provision in the policy that upon failure to pay the interest or assessments for thirty days after notice and demand, the policy shall cease, does not bar a recovery of these assessments. This condition, being for the benefit of the company, may be waived by it: State Ins. Co. v. Todd, 83 Pa. 279; Columbia Ins. Co. v. Buckley, 83 Pa. 293; Lebanon Ins. Co. v. Erb, 112 Pa. 149; Susquehanna Ins. Co.'s App., 105 Pa. 615. Moreover, § 25 of the by-laws expressly provides that when there is such default, the directors shall retain the premium note and collect thereon all sums due or to become due during the term for which it had originally been given. This by-law was, by reference in the policy, made a part of the contract, notwithstanding that a copy of it was not indorsed on the policy, and it was binding on the assured: Susquehanna Ins. Co.'s App., 105 Pa. 623; Susquehanna Ins. Co. v. Toy Co., 97 Pa. 431.

3. The assessments were not in conflict with the third clause of § 30 of the by-laws, relating to annual interest notes. That clause excepts such notes only to the extent of "the interest paid and to be paid within six months," and as no interest was ever paid by the defendant, and the first assessment here claimed was laid two years after the date of the policy, the company was justified in treating this as if it were an ordinary assessment policy. This is no longer an open question. It was expressly decided in Crawford v. Insurance Co., 11 Cent. R. 653 (3 Pa. S. C. Dig. 107), which arose upon the same by-laws as the present case, that this method of assessing notes upon the annual interest plan, when no interest has been paid, is legal.

*Mr. J. Frank Snyder* and *Mr. John H. Orvis*, for the appellee:

In order that the plaintiff may recover, it is incumbent on it to show that the assessments sued for were lawfully made according to the terms of its charter and by-laws: Susquehanna Ins. Co. v. Gackenbach, 115 Pa. 498; Wood on Fire Insurance, 1218; Atlantic Ins. Co. v. Fitzpatrick, 2 Gray 279. We contend that all the assessments claimed in these actions are irregular and void.

Arguments.

1. The assessments are void because they are not based upon the amount of the defendant's premium note, but upon a new basis of almost double that amount, fixed by a by-law which was adopted after the date of his contract and without his knowledge or consent; and they are largely in excess of the extent of his liability under the contract. The language of the by-laws of 1876 is plain, and admits of but one meaning on this point. Under them, the premium notes are to be the basis of assessment, and the defendant's liability would be measured by the proportion which the amount of his note bore to the aggregate of the notes held by the company. If there were any doubt as to this, the language of the amendment of 1877 clearly indicates that such had been the rule. That amendment and the by-laws of 1879 could not, without the defendant's consent, alter his rights as a party insured: Insurance Co. v. Connor, 17 Pa. 142; Rosenberger v. Insurance Co., 87 Pa. 212; Revere v. Copper Co., 15 Pick. 363.

2. The assessments are void because all the premium notes in force at the time the assessments were laid, were not included therein, some of them being intentionally omitted. The by-laws exempt no class of notes, but require that all shall be assessed. The intentional omission of any will invalidate an assessment: Marblehead Ins. Co. v. Hayward, 3 Gray 208; Wood on Fire Insurance, 1218; Susquehanna Ins. Co. v. Gackenbach, 115 Pa. 500. The general rule of law is that assessments on any particular note must be restricted to losses occurring after its date: Wood on Fire Insurance, 1218; Long Pond Ins. Co. v. Houghton, 6 Gray 77. But § 30 of the by-laws of 1876 changes this rule, and, whilst it imposes on the assured the burden of contributing to liabilities previously incurred, it benefits him by requiring all who become insured after him to contribute proportionately with him to the losses occurring during the term of his insurance. It is competent for the parties to make such a contract, and the directors have no right to make assessments on another basis: Susquehanna Ins. Co. v. Gackenbach, 115 Pa. 500.

3. The construction of these by-laws which the defendant contends for, is a most favorable one for him, it is true; but they were made by the company for its own benefit, and if the meaning is doubtful, this is the company's fault. That con-

struction must be adopted which is most favorable to the assured: Western Ins. Co. v. Cropper, 32 Pa. 351. The reason given for assessing the defendant's interest policy and omitting other interest policies, was that he had never paid any interest. His note does not contain one word about interest, but the $49.50 paid at the time of the application was exactly one year's interest on the amount of the note, and if this was not paid for the first year's interest, what was it paid for? By reason of that payment no interest would be due until September 21, 1878. Two assessments were made before that, and if this interest policy was properly assessable, all other like policies should have been assessed also. No authority has been shown for the omission from the assessments of notes of members supposed to be insolvent.

### NO. 383.

Opinion, Mr. Justice Clark:

These two cases, brought by the Susquehanna Mutual Fire Insurance Company against James L. Leavy, were tried together, in the court below, and, although separate appeals were taken, they were argued together here. The first action was brought to recover assessment No. 4, and the second to recover assessments Nos. 7, 8, 9, 10, 11, 12, and 14 upon the defendant's premium note or policy No. 1006. The policy issued September 21, 1876, and provided for insurance to the amount of $2,500 on the defendant's hotel in Curwensville, for loss from fire, for three years; it was what was known as an "annual interest policy," the premium note accompanying the application being subject to the payment of 6 per cent interest annually.

The plaintiff exhibited the note in evidence, and proved the assessments; the method or manner in which they were made; and that, although due and proper notice had been given, they had not been paid. At the close of the plaintiff's case, the court entered a compulsory nonsuit, and the refusal of the court to take the nonsuit off is the error assigned.

The reasons assigned in the opinion filed, are, first that as a consequence of the non-payment of the interest on the premium note, and of the assessments thereon, the policy became forfeited and void, and, although the note might under the twenty-fifth section of the by-laws, be retained for the collection of the

Vol. cxxxvi—33

interest, the assessments upon it could neither be legally made nor collected after the policy became void; and, second, that the method of the assessment does not appear to have been authorized by the by-laws of the company in force when the policy issued.

The policy, by its express terms, was made and accepted with reference to the application, the by-laws of the company, and the conditions annexed thereto, which were declared to be a part of the policy. The fifth condition is as follows :

" No insurance shall be considered as binding until the actual cash payment of the premiums ; and should the annual interest, or any assessment that may be levied on the premium note given for this insurance, be in arrears and unpaid, for the space of thirty days after notice and demand, then, and in every such case, this policy shall cease."

It is conceded that, although due and proper notice was given, neither the annual interest nor any assessments were paid, as provided by the policy, and it is contended that the policy and the premium note are ipso facto void. But, as this provision was clearly for the especial benefit of the company, it was competent for the company to waive the protection which was intended : State Ins. Co. v. Todd, 83 Pa. 279 ; Columbia Ins. Co. v. Buckley, 83 Pa. 293 ; Susquehanna Ins. Co.'s App., 105 Pa. 615 ; Lebanon Ins. Co. v. Erb, 112 Pa. 149. The defendant cannot take advantage of his own wrong, or set up his own default, alone, to work a forfeiture of his contract, unless its terms are clearly to this effect. The right of the company was optional; they might either forfeit the contract or affirm its continuance, and there is evidence of the strongest character to show that the company chose to do the latter: Galey v. Kellerman, 123 Pa. 491 ; Wills v. Manufacturers' N. Gas Co., 130 Pa. 222. Moreover, the express provision of the twenty-fifth by-law of the company is that, notwithstanding the failure of the insured to pay the interest and assessments, " the directors shall retain such premium note or notes and collect thereon all such sums as may be due or become due thereon, during the term for which it has originally been given." It is of no consequence that this by-law of the company was not indorsed upon the policy. The policy was made and accepted, " with reference to the by-laws of this company ; and also the appli-

Opinions of the Court.

cation and conditions annexed, which are made part of the policy;" and these are "to be used and resorted to, in order to explain the rights and obligations of the parties." The company was a mutual company, and the defendant was a member of it. He is therefore presumed to have known of the existence of this by-law from the date of his membership: Susquehanna Ins. Co.'s App., 105 Pa. 615; Susquehanna Ins. Co. v. Toy Co., 97 Pa. 431. The company had a right, therefore, to retain this note, and " to collect thereon all such sum or sums as may be due or become due thereon, during the time for which it had originally been given;" and this clearly includes the annual interest which might accrue and the assessments made upon it. We are of opinion, therefore, in view of the evidence, that the court was wrong in declaring the policy to be void for non-payment of interests and assessments.

But it is contended that even if the policy and note were not void from forfeiture, the mode of assessment adopted by the company was not in conformity with the contract. The by-laws of June 6, 1876, in the first and second clauses of § 30, provide:

"Sec. 30. If at any time hereafter an assessment shall be made, the amount to be levied on premium notes shall be rated according to the following classification, to wit:

"First. All premium notes in force at the time the assessment may be declared, shall be liable to assessment for all losses unadjusted and unpaid at that time, subject to abatement as hereinafter specified.

"Second. All premium notes which have expired and are not in force at the time such assessment is declared, shall, nevertheless, be liable to assessment for all unpaid losses which existed at the time of the expiration of such premium note or notes, pro rata with all other premium notes then in force, and the amount thus ascertained and levied upon such expired premium notes to be deducted from the gross amount of the liabilities of the company, for which such assessment is to be made, and balance of the liabilities then remaining to be assessed upon the premium notes then in force."

These sections were subsequently revised by the company, and on January 21, 1879, were adopted in a somewhat different form; the meaning, however, so far as they affect the questions

involved in this case, was not greatly, if any, changed. The
same method of assessment, with but little modification, is pro-
vided for; both series of by-laws are susceptible of the same gen-
eral construction in this respect. These by-laws of 1879 came
before this court for construction in Susquehanna Ins. Co. v.
Gackenbach, 115 Pa. 492; but in that case the record was inac-
curate, some words of the by-law having been omitted, and other
words inserted, which wholly changed its meaning. Whilst
the decision in that case was right, according to the record, it
has no application here, for the by-law, as it appears in this re-
cord, is different, and calls for an entirely different construction.
The proper construction was afterwards given in Susquehanna
Ins. Co. v. Stauffer, 125 Pa. 416. "The wording of this by-
law," said Mr. Justice MITCHELL, who delivered the opinion of
the court, "is confused and obscure, but the general scheme
intended is reasonably clear. It is, that all policies which were
in force at the time of the assessment, or at the time of the loss,
both or either, (as the case may be,) shall be liable for the loss,
but the assessment shall be laid, in the first instance, upon the
policies in force at the time of the loss, whether since expired
or not; and the policies, issued subsequent to the loss and re-
maining in force at the time of the assessment, are to be assessed
only for the balance if the first branch of the assessment should
be insufficient. In pursuance of this general intent, the first
clause directs, not that all members whose policies are in force
at the time the assessment is declared shall be assessed, but that
they shall be liable to assessment, and qualifies this liability by
making it subject to a specified abatement. The second clause
then proceeds to define the abatement, which is that policies
now expired, but which were in force when the liability accrued,
shall be assessed pro rata with all the policies then in force, i. e.,
at the time of the loss or liability incurred, and this first branch
of the assessment shall be deducted from the total of liabilities,
and the balance only be then assessed upon the other policies
'then in force,' i. e., those which were in force at the time of the
loss, and which have not yet expired." To the same effect, also,
is Thropp v. Insurance Co., 125 Pa. 427, where the same con-
struction given to the by-laws of 1879 was given to the by-laws
of 1876. We understand, from what the witness Huntzinger
testifies, that the assessments were made upon the premium

notes in conformity with this construction of the by-laws, and according to the classification therein recognized.

But the note in suit, as we have said, was an annual-interest note ; and, in reference to such notes, it is, in the third clause of the thirtieth section of the by-laws of 1876, provided as follows :

" Third. Notes subject to the payment of annual interest, and deposit notes upon which the interests have been paid in advance, shall not be assessed until all other notes held by the company, liable to assessment, shall have first paid in assessments an amount equal to the interest paid and to be paid within six months next succeeding the date of such assessment ; any deficiency then existing may be equitably assessed on all the notes held by the company."

No interest had been paid on this premium note : all that had been paid was the cash premium ; and, although in this particular instance, that was just 6 per cent upon the premium note, it was not paid as interest, nor was it so regarded. The interest upon the note was wholly unpaid ; and, as the note by its terms was liable to assessment for losses, and was not embraced in the excepted class defined in this third clause, we can see no reason why it should have been omitted in the assessment. "Annual interest and deposit notes, upon which the interests " had been paid, were not liable to assessments " until the other notes had paid in on assessments an amount equal to the interest thus paid and to be paid within six months," etc. ; but Leavy had paid no interest, and his liability was not affected. Those only who had paid the annual interest were entitled to abatement ; any deficiency then existing to be equitably assessed on all the notes held by the company, according to the classification already referred to.

In whatever form the policy is issued, however, it appears that what is termed the " schedule premium " forms the uniform basis of assessment. The schedule premium is the result of the rate applied to the amount of the insurance. Property is rated for insurance according to the supposed risk ; it may be rated at 1, 2, 3, or more per cent upon the amount, according to the risk. Thus, in the case in hand, the property was rated at 3 per cent, which rate applied to the $2,500, the amount of insurance, gives the schedule premium, $75. The schedule

premium multiplied by 11 determines the amount of the pre-mium note, which is the basis upon which the annual interest is to be paid; and multiplied by 20, determines the practical basis of the assessment. This basis of assessment is uniform, and applies to all premium notes, whether taken upon the an-nual interest or general assessment plan; for it would seem that all premium notes subject to the provision of § 30 of the by-laws are liable to assessment. As to the liability to assess-ment of persons insured under the deposit note plan, the testi-mony is not very clear. According to that portion of § 30, quoted above, it might appear that they are, in a certain con-tingency.

Under the general assessment plan, the premium notes were taken in a sum much larger than under the annual interest plan, in which latter case the amount was fixed with reference to the annual interest payment. It would therefore be grossly inequitable and unjust to assess these different classes of notes according to the same rate. The by-law provides that in a certain contingency "all the notes held by the company shall be equitably assessed" to make up the deficiency. As the different classes of notes were drawn in sums entirely dispropor-tionate to the risks incurred, it was but equitable and just that some scheme should be adopted to establish a uniform and just basis of assessment. To accomplish this purpose, assessments were in all cases made upon the true and proper basis of the rate of the risk, applied to the amount insured. This gives, in each case, the schedule premium, which is, in fact, the true basis of the assessment; the multiplication of this by 20 was simply for convenience, and, as this was done in all cases, the results were uniform. The assessments were upon the note, but they were for a sum, or according to a uniform rate, ascer-tained in the manner specified. This method was just and equitable, we think, and did not need the amendment of 1877, or the by-laws of January 21, 1879, to sustain it. It is difficult to see how all the notes held by the company could have been equitably assessed in any other way. It may be conceded that the defendant was not liable for assessments beyond the amount of the note, but, as the note carried interest from its date, that limit was not reached. This particular form and method of assessment was approved in Crawford v. Insurance Co., reported

in 11 Cent. R. 653, and we can see no reason why we should not adhere to the rulings in that case.

The Judgment is therefore reversed, and a venire facias de novo awarded.

NO. 382.

OPINION, MR. JUSTICE CLARK:

For reasons given in our opinion, ante, 513, between the same parties, this

Judgment is reversed, and a venire facias de novo awarded.