Joseph E. Pooler *vs.* Sargent Lumber Co.

Penobscot.    Opinion July 12, 1915.

*Damages.    Employee.    Independent Contractor.    Mutuality of Interest.*
*Negligence.    Servant.    Volunteer.*

An action to recover damages for injuries sustained by plaintiff while upon the premises of the defendant.

*Held:*

1.  One may be an independent contractor, although not paid a round sum for his work, as when paid by the day, or the cost of the work, and a per cent.

2.  If the owner of premises under his control employs an independent contractor to work upon them, which from its nature is likely to render the premises dangerous to persons who may come upon them by the owner's invitation, the owner, by reason of the contract, is not relieved from obligation of seeing that due care is used to protect such persons.

3.  Mutuality of interest does not justify a consignee or his agent in his claim to absolute protection while going back of the point of delivery, along the line of transportation, or to the place of transportation, to intervene at the request of a consignor's servant or otherwise, without the consignor's knowledge and consent.

4.  To open such an avenue of interference would tend to disturb the settled rules governing commercial and other contract relations, and would be manifestly against public policy and the dictates of reason and common sense.

5.  In this instance the passage of cars to and from the mill, the means of transportation, and all the attendant dangers were well known to the plaintiff as well as to the defendant, and being well known to both, there is no rule of law holding the defendant liable under the facts found in this case.

6.  The plaintiff can have no greater right than the servant who requested his assistance, and it is not claimed that his co-worker on the car can maintain an action against any person for his injuries.

On report.    Judgment for defendant.

This is an action on the case to recover damages for injuries sustained by plaintiff, an employee of the Eastern Manufacturing Company, while upon the premises of defendant.    Plea, the general issue.

At the conclusion of the evidence, the case was reported to the Law Court to determine the rights of the parties upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Bartlett Brooks,* for plaintiff.

*Frank A. Floyd, and Edgar M. Simpson,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J. An action on the case to recover damages for injuries sustained by the plaintiff while upon the premises of the defendant, reported for the determination of this court.

The defendant is owner of a saw mill, dam and piling ground at South Brewer. There is a pond between the mill and piling ground. The dam extends from the mill to the piling place, and refuse from the mill is carried to the piling place on a tramway built across the dam. The plant of the Eastern Manufacturing Company is eight hundred feet west of the westerly end of the defendant's dam. The tramway over the dam extends to the mill of the Eastern Manufacturing Company.

The logs in process of manufacture at the time of the injury complained of, belonged to the Bangor Lumber Company, and the waste therefrom belonged to that company. By agreement of the three companies the waste was to be hauled in box cars by the defendant or its agents across the dam, where the cars were to be taken by the Eastern Manufacturing Company's men and hauled on the defendant's land and tracks to the Eastern Manufacturing Company's mill. The part of the mill where the cars in question were loaded is elevated several feet above the top of the dam. The custom pursued for many years was to start the car from the end of the mill and allow it to run down the grade under the control of an operator who controlled the car over the incline by the use of a brake and then set it free to run across the top of the dam to the point of delivery at the end of the dam.

The plaintiff was a servant of the Eastern Manufacturing Company and for nearly two months had hauled the cars from the end of the dam to its mill, and was so employed on the day of the injury.

When the plaintiff reached the dam at the time in question the cars were not ready, and he sat down to await their arrival. His

load would be made up of two cars, the first of which in reaching a point two rods from the westerly end of the dam, left the rails and stopped. What then occurred is shown by the record:—

Q. Mr. Pooler, coming to the morning of the accident, you were accustomed to wait for the cars to be brought across the dam?

A. Yes, sir.

Q. Were you waiting there on the morning of the accident?

A. Yes, I drove along and stood there, sat there, a few minutes.

Q. Whether or not you saw a car coming across the bridge or across the dam, the track?

A. Yes, sir.

Q. Who was in charge of the car?

A. Mr. Theal.

Q. How was he bringing the car across the track?

A. He was shoving the car across. He was on the back side shoving it over towards me.

Q. What happened to the car?

A. The car run as far as that switch and run off. I was settin' there, when he says: "Joe, come over and give us a lift;" and I says "Sure thing!" So I walked over and got hold of the car.

Q. You say that you agreed and took hold of the car with Mr. Theal?

A. Yes, sir. We were lifting the car up; took hold of the car so fashion (indicating) and lifted it up.

Q. Where did Mr. Theal stand?

A. On the left side of me, that corner (indicating). The car run off on the left side of the track. That brought me about in the middle, along there (indicating) a little mite more on the side, but inside the tracks. I got hold of this car so fashion (indicating) and pulled on that end. We started to lift and we thought we had the car on.

Q. You moved the car, did you, when you first lifted?

A. We lifted, but it didn't come on to the track. We thought we had it—I thought we did have it. I stood up so fashion (indicating) and I felt a kind of jar—the dam was just back of us—and I kind of whirled around, and when I did the car was right on me.

Mr. Theal, at whose request the plaintiff entered the defendant's premises to assist in replacing the car upon the track, was employed

and paid by one Davis, who for several years had removed the refuse from defendant's mill at a stipulated sum per day, and a like amount if the work was performed at night.

Much space has been devoted by counsel to a discussion of the status of Mr. Davis,—the plaintiff asserting that he was the servant of the defendant merely and that the defendant was in all respects liable to the plaintiff for the negligence of that servant as well as for its own negligence, while the defendant asserts that Mr. Davis was an independent contractor, and that if the plaintiff was injured through the negligence of Davis he alone was liable therefor.

But, the plaintiff says that if Mr. Davis was an independent contractor, the defendant is still liable because 1, the injury claimed resulted from the negligence of the defendant in maintaining the track, and cars, so used, and 2, that the injury was such as might have been anticipated by him, as the probable consequence of the work and he failed to take proper precaution to prevent it. Finally, that defendant having duties it could not delegate was therefore liable.

We think the record sufficiently established the claim that Davis was in fact an independent contractor, but we do not hold that such finding necessarily affects the plaintiff's rights in this case.

The fact that the owner of the premises on which work is to be done by an employee retains control thereof does not prevent the employee being an independent contractor. 26 Cyc., 1551.d. *Boomer* v. *Wilbur*, 176 Mass., 482.

One may be an independent contractor, although not to be paid a round sum for his work, as when paid by the day, or the cost of the work, and a per cent. 26 Cyc., 1551, and cases cited. In *Weilbacker* v. *J. W. Putts Co.*, Md. Court of Appeals, Apl. 1914. 91 Atlantic, 343, the owner of a building contracted with a painter to paint it, he to furnish the appliances and employ the labor therefor, the owner not retaining any supervision of the work or any control of the men. The contractor used a loose guy line which allowed the stage to slip and the contractor fell therefrom and struck the plaintiff as she was passing on the sidewalk below. *Held*, that the negligence was the negligence of an independent contractor for which the owner was not liable,—and further, the conditions were not such that the injury might have been anticipated by the owner as the probable consequence of the work if he failed to take the proper precaution to pre-

vent it, and hence the owner is not liable, although if the injury had been such that he should have anticipated it, he would have been liable.

We are in full accord with the rule invoked by the plaintiff that if the owner of premises under his control employs an independent contractor to do work upon them, which from its nature is likely to render the premises dangerous to persons who may come upon them by the owner's invitation, the owner, by reason of the contract, is not relieved from the obligation of seeing that due care is used to protect such persons. *Curtis* v. *Kilby et al.*, 153 Mass., 123, and cases cited. But in that case there was evidence that the premises on which the injury occurred were under the general control of the defendant. And the finding therein was based upon the fact that "the owner continued to hold out the invitation to enter, and was therefore bound to exercise due care in keeping the premises reasonably safe for use according to the invitation." See *Woodman* v. *Railroad*, 149 Mass., 149.

The plaintiff's counsel relies largely upon the claim of mutuality of interest between the plaintiff and defendant, and urges that the plaintiff had an interest in facilitating his own work and that of his master, in securing an earlier delivery of the refuse from the mill for which the master had contracted. But the evidence does not support the claim sufficiently to bring the case within the rule laid down in *Welch* v. *M. C. Railroad*, 86 Maine, 552, cited and relied upon by the plaintiff, or the cases cited therein in support of the conclusions in that case. In the cases therein cited there were no such circumstances as appear here. The case so far as the briefs of counsel throw any light, and we may add so far as a careful examination of the cases shows, is one of novel impression. The reports cited, state cases in each instance where the point of delivery of the goods of the consignee had been reached without untoward incident or accident, or cases where the consignee or consignor accompanied the articles transported, and from careful examination of the same we do not perceive that the conclusions therein are in conflict with our finding in the case at bar.

Mutuality of interest as recognized in *Welch* v. *M. C. R. R.*, supra, does not justify a consignee or his agent in his claim to absolute protection while going back of the point of delivery, along the line

of transportation, or to the place of transportation, to intervene at the request of a consignor's servant or otherwise without the consignor's knowledge and consent as in this case.

To open such an avenue of interference would tend to disturb the settled rules governing commercial and other contract relations, and, would be manifestly against public policy and the dictates of reason and common sense.

In *Welch* v. *Maine Central R. R. Co.*, supra, action was brought by Thomas Welch and after his death prosecuted by his administrator, to recover damages for injuries received by said Welch, through the negligence of the defendant in using and improperly loading a defective dump car, which said Welch, at the request and by permission of the defendant, it was alleged, attempted to dump, and was injured while so doing. Welch was the servant of one Shannahan, a contractor, engaged in filling and grading land for one Jose, who had arranged with the defendant to deliver earth for that purpose. After the first day, at the request of one Dolan, conductor of defendant's work train, this work of dumping the cars was all done by Shannahan's men, and this fact was well known to the chief engineer of defendant company, who had supervision of the work. The case shows, 1.—The request on the part of the defendant's servants, and knowledge on the part of the defendant, that the delivery of the earth was actually being made by the servants of the Shannahans. 2.—That a defective car was used by the defendant's servants without the knowledge or consent of the plaintiff. 3.—That the plaintiff was acting in furtherance of the interest of his employer, and consequently in his own interest.

These reasons were found to be sufficient to support the plaintiff's claim, the decision, however, goes no farther than to hold "that the persons having charge of freight may allow the servants of the consignee to remove it from the cars, and the latter while so engaged, have a right to be protected against the negligence of the former. In other words, that, in such cases the rule of *respondeat superior* applies." It will be noticed that, while that rule was affirmed, the decision was reached, and then not unanimously, after recognizing the distinction between a mere volunteer, and one who has an interest in the work to be performed, and establishing beyond question the distinction between the rights of one sent to receive delivery of goods or mer-

chandise and one as in this case, who assists by request of a servant of a consignor and without the knowledge or consent of the latter, or voluntarily, in the act or process of delivery of such shipment.

In *Wischam* v. *Rickards*, 136 Pa. St., 109, 20 Atl. Rep., 502, cited in *Welch* v. *M. C. R. R.*, supra, the defendant was delivering a large fly wheel at the factory of B., plaintiff's employer, and the servants of both defendant and B, were jointly engaged in unloading the wheel. Defendant's foreman called for help as the wheel was being lowered, and B's foreman ordered the plaintiff to assist, and while executing the order the plaintiff was caught under the wheel and injured, and it was held that the plaintiff assumed the relation of servant to the defendant, even though ordered to assist by his employer's foreman, at the request for help from the defendant's foreman, and that he could not recover for the negligence of the other servants of the defendant.

In the case at bar it may be said as the court said in *Wischam* v. *Rickards*, supra, "the case is an exceedingly close one, highly exceptional in its facts and apparently without a precedent among the authorities," but the conclusion therein is in harmony with the decision in *Welch* v. *Me. Central R. R.*, supra, and is based upon the doctrine enunciated in *Potter* v. *Faulkner*, 101 E. C. L., 800. In that case the defendant's porters were lowering bales of cotton from the defendant's warehouse, and his carter was receiving them into his wagon. The plaintiff, who was waiting with a wagon to receive a load of cotton for his master, at the request of the defendant's carter assisted him, and in consequence of the negligence of the defendant's porters, a bale of cotton fell and injured him. It was held that the defendant was not liable to an action.

The court say, "it will be perceived that the court considered the plaintiff to be a volunteer, notwithstanding he only intervened at the request of the defendant's servant. Now, while it may seem a little strained to call such a person a mere volunteer, the reason given for the non-liability of the master is more substantial, to wit, that the plaintiff's act of associating himself with the defendant's servant in the performance of the work was done without the knowledge or consent of the master, and therefore he could acquire no better position than that of the servant with whom he associated himself."

The duty and liability of the plaintiff in the circumstances is well settled. Before he may recover it must appear that he was himself

without fault, that he was in the exercise of ordinary care, and that no act or omission to act on his part, contributed to his injury.

In these essential duties the plaintiff falls far short of satisfying the plain requirements of law. The record discloses an entire absence of ordinary care on his part. While the work was dangerous as is usual in all mills, there was no concealed danger. An ordinary accident had occurred. A tram car had left the track. Such accident is not only likely to occur, but in railway work and tramway service sure to occur. In this instance the passage of cars to and from the mill, the means of transportation, and all the attendant dangers were known to the plaintiff as well as to the defendant, and being well known to both there is no rule of law holding the defendant liable under the facts as found in this case.

It has been seen that the plaintiff can have no greater right than the servant who requested his assistance, and it is not claimed that his co-worker on the car can maintain an action against any person for his injuries. At best, the law confines the plaintiff to a class. In this instance if not a volunteer he was in the class with the servant of the defendant or Mr. Davis for the time being, and for the purposes of this case it matters not which. He was entitled to protection as they were and at the same time was subject to the duty of using ordinary care. In this important particular he fails signally on his own showing. With his knowledge of the business, its requirements and dangers, it was negligence for him to stand with his back to an approaching car,—the car for which he was waiting, and toward which he did not look until he was run down by it. By his own conduct he placed himself outside the protection assured to those who, while themselves in the exercise of ordinary care, are injured through the negligence of others.

The entry will be,

*Judgment for the defendant.*